UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARLOS MOORE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DELAFONTAINE,<br><br>　　　　　　　　　　Defendant. | 3:17-cv-00720-RCJ-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Marlos Moore ("Moore") against Defendant Eric Delafontaine ("Delafontaine").[2]  Currently pending before the court is Defendant's motion for summary judgment. (ECF No. 19).  Moore opposed the motion (ECF No. 21) and Defendant replied (ECF No. 22).  For the reasons stated below, the court recommends Defendant's motion for summary judgment (ECF No. 19) be granted.

I.　**BACKGROUND AND PROCEDURAL HISTORY**

Moore is an inmate lawfully in the custody of the Nevada Department of Corrections ("NDOC") and, according to the NDOC database, is currently housed at the Warm Springs Correctional Center ("WSCC").  Moore sues for events that occurred while incarcerated at the Ely State Prison ("ESP"). (ECF No. 4 at 3.) Proceeding *pro se*, Moore filed the instant civil rights action pursuant to 42 U.S.C. § 1983, alleging one

---

[1]　This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]　Moore also named Warden Baker and Assistant Warden Burns in his Complaint. (*See* ECF No. 1-1.)  On screening, the court dismissed Defendants Baker and Burns from the entirety of this case without prejudice. (ECF No. 4.)

count and seeking monetary damages and injunctive relief. (*Id.* at 4, 9.)[3]

Moore's complaint alleges on January 2, 2015,[4] while passing out lunches, Defendant Delafontaine stated Moore was a "snitch" to Moore's cellmate and those persons in surrounding cells. (ECF No. 1-1 at 1, 4.) Delafontaine further stated all the correctional officers were aware of Moore's grievance against Delafontaine and nonparty Correctional Officer Noreiago for taking Moore's property. (*Id.* at 4.)

According to the complaint, "state stated there was no danger" but Moore experienced emotional and psychological trauma from the incident. (*Id.*) Moore had to be moved more than four times because his cellmates became aware of Delafontaine's accusation, and it took over two years for Moore to get a transfer out of ESP for his safety. (*Id.*)

Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order allowing Moore to proceed with his Eighth Amendment claim against Defendant Delafontaine. (ECF No. 4.) Additionally, the court found Moore stated sufficient facts allowing the court to infer that his First Amendment rights were also violated. (*Id.* at 5.)

On November 26, 2019, Delafontaine filed a motion for summary judgement asserting: (1) Moore's Eighth Amendment claim for duty to protect fails because ESP addressed Moore's concerns and Moore did not assert a claim of injury; (2) Moore's First Amendment retaliation claim fails as a matter of law because there was no chilling of Moore's exercise of First Amendment freedoms; and, (3) qualified immunity applies. (ECF No. 19.) Moore responded on December 19, 2019 (ECF No. 21), and Defendant replied. (ECF No. 22.)

///

///

---

[3] Moore's Complaint states he sued for a violation of the Eighth Amendment. However, the court found Moore stated a colorable claim for a First Amendment violation based on the same set of facts and included the claim. (*See* ECF No. 4 at 3 fn. 1.)

[4] Defendant alleges that Moore's complaint says 2015, which appears to be in error. According to Defendant, the alleged incident occurred in 2016. (*See* ECF No. 1-1.)

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, based on authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising

3

therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   DISCUSSION**

    **A.   <u>Civil Rights Claims under 42 U.S.C. § 1983</u>**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*,

4

526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Eighth Amendment – Duty to Protect

Delafontaine argues he is entitled to summary judgment on Moore's Eighth Amendment duty to protect claim because there are no genuine issues of material fact regarding ESP's response to Moore's allegations. (ECF No. 19 at 4-6.) Delafontaine states regardless of whether Moore's allegations are true, ESP changed Moore's beds, cells, and cellmates on multiple occasions, and ultimately transferred Moore to a different prison in response to Moore's alleged safety concerns. (*Id.* at 4; *see also* ECF No. 19-2.) Delafontaine further asserts Moore suffered no injury as a result of the alleged "snitch" label and cannot state a constitutional claim. (*Id.* at 5.)

In opposition, Moore argues summary judgment should not be granted. (ECF No. 21.) Moore's opposition specifically states Delafontaine is not entitled to summary judgment because of the psychological harm inflicted on Moore by Delafontaine. (*Id.* at 3.) Additionally, Moore reiterates allegations made against Delafontaine resulting from Delafontaine's alleged labeling of Moore as a "snitch," and makes reference to Grievance #2006-30-4922, which purportedly "shows constant abuse by C/O Delafontaine." (*Id.* at 4.)

Delafontaine's reply argues that Moore does not dispute any genuine issue of material fact because Moore's opposition merely repeats the allegations from his complaint, which is insufficient to avoid summary judgment. (ECF No. 22.) Delafontaine asserts Moore cannot avoid summary judgment by relying upon his pleadings; rather he is required to tender evidence of specific facts in the form of affidavits, admissible

evidence, or discovery materials. Fed. R. Civ. P. 56(e); *Matsushita,* 475 U.S. at 586 n. 11; *Liberty Lobby,* 477 U.S. at 255. Delafontaine claims Moore failed to tender any evidence or dispute the facts at issue. (ECF No. 22 at 2.)

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate… safety.; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

In the Ninth Circuit, allegations that prison officials called a prisoner a "snitch" in the presence of other inmates are sufficient to state a claim of deliberate indifference to an inmate's safety. *See Valandingham v. Bojorquez,* 866 F.2d 1135, 1139 (9th Cir. 1989); *see also Lemire v. Cal. Dep't of Corr. & Rehab.,* 726 F.3d 1062, 1074 (9th Cir. 2013) (explaining that plaintiffs alleging deliberate indifference in § 1983 actions "must … demonstrate that the defendants' actions were both an actual and proximate cause of their injuries"); *but see Morgan v. MacDonald,* 41 F.3d 1291, 1293-94 (9th Cir. 1994) (rejecting Eighth Amendment claim where prisoner who had been labeled a snitch had not been retaliated against by other inmates).

On January 6, 2016,[5] Moore filed an informal grievance (#2006-30-15960) regarding the allegation against Delafontaine, requesting video evidence and stating that

---

[5] Defendant's motion states the grievance was submitted on January 26, 2016. (*See* ECF No. 19.) However, Defendant's reply correctly reflects the date Moore submitted the grievance as January 6, 2016. (*See* ECF No. 22.)

6

since the incident "there has been hostility and anger in my cell." (*See* ECF No. 19-1 at 8.) Corrections staff denied Moore's informal grievance by stating, "Staff deny your allegations that you were spoken to in an unprofessional way. Further, there is no video evidence available to support [Moore's] claim. Your cellie was moved on 1/27/16, so you are currently in no danger. However, OP 513 still requires you to double cell." (*Id.*)

Despite moving Moore's cellmate, on March 23, 2016, Moore filed a first-level grievance, where Moore acknowledged actions were taken by a caseworker on January 27, 2016, that his [cellmate] was moved following the incident with Delafontaine. (*Id.* at 6.) Moore stated that Delafontaine's conduct was planned and because he was in Ely he could and still may be hurt. (*Id.* at 4.) Moore requested to be removed from ESP while "actions be taken on C/O [D]elafontaine," and to be moved into "Ad-Seg" before his "life gets in anymore danger." (*Id.* at 4.) Again, prison officials denied Moore's grievance noting staff denied Moore's allegation of being called a snitch, but staff was reminded of proper conduct as outlined in AR 330, there was no available video evidence to support Moore's claim, and Moore's safety concerns were alleviated on January 27, 2016, when his cellmate was assigned to different cell. (*Id.* at 5.) Moore submitted a second-level grievance on April 26, 2016, making the same allegations, which was again denied by prison officials. (*Id.* at 2-3.) While incarcerated at ESP following the incident, Moore was moved nine times between April 19, 2015 and July 27, 2017, when he was transferred to Lovelock Correctional Center ("LCC"). (*See* ECF No. 19-2 at 2.)

It is undisputed Moore waited four days from the alleged January 2, 2016, "snitch" label incident before submitting his informal grievance against Defendant. (*See* ECF No. 19-1 at 8.) On January 27, 2016, ESP reassigned Moore's cellmate. (*Id.* at 3.) In response to Moore's grievances, ESP officials changed Moore's cellmates more than four times and changed cell assignments more than nine times between January 2016 and July 2017, ultimately transferring Moore to LCC on July 27, 2017. (*See* ECF No. 19-2 at 2.) Moore admitted NDOC moved him from ESP to LCC in response to his safety

7

concerns and admitted during his time in custody of NDOC, he was never physically injured by another prisoner. (*See* ECF No. 22-1 at 2.)

While an allegation that a prison official called a prisoner a "snitch" in the presence of other inmates is sufficient to state a claim for deliberate indifference to an inmate's safety, *Valandingham,* 866 F.2d at 1139, Moore offers no evidence to support his allegation or to raise a genuine dispute of material fact regarding the purported threats to his safety in order to survive summary judgment. In this case, steps were taken to protect Moore regardless of whether Defendant actually did or did not call Moore a snitch because shortly after Moore grieved the incident, ESP took action to ensure Moore's cellmate was transferred, and it is undisputed Moore was never attacked or injured. *See Miller v. Williams,* 976 F.2d 737 (9th Cir. 1992) (unpublished) (affirming dismissal in the absence of injury); *see also* 42 U.S.C. § 1997e (no federal action permitted for emotional injury without physical injury). In fact, Moore acknowledges, and the evidence in the record establishes, ESP not only reassigned Moore's cellmate in response to his grievance, but went a step further by changing his cellmates more than four times and changing Moore's cell assignments nine times, which ultimately lead to Moore's eventual transfer to LCC. (*See* ECF Nos. 19-1, 19-2, 22-1.)

Further, to establish a duty to protect violation, the prisoner must prove prison officials were deliberately indifferent to serious threats to the inmate's safety by showing the official knew of and disregarded an excessive risk to the inmate's safety. *Farmer,* 511 U.S. at 834, 837. Here, the evidence proves NDOC went above and beyond to address Moore's safety concerns. Furthermore, Moore provides no evidence to the contrary of any ongoing, contemporary threat to his safety to substantiate his claims of deliberate indifference. *Id.* at 845-46. Moore fails to meet his burden to establish a genuine issue of fact related to his claim of deliberate indifference. Therefore, Delafontaine's motion for summary judgment should be granted.

///

///

## C. First Amendment – Retaliation

Delafontaine next argues while Moore's complaint never set forth a specific retaliation claim, the court's construction of a First Amendment retaliation claim was based on a single line in Moore's complaint which says: "[Delafontaine] was aware of request that Moore wrote to the 'Seargeant' [sic] about C/O[s Delafontaine and Noreiago] taking Moore's property for no reason." (ECF No. 1-1 at 4.) Delafontaine argues the language in the complaint does not contain any allegation that Moore's complained-of conduct had any chilling effect upon Moore's ability to exercise his First Amendment rights. (ECF No. 19 at 7.) "In other words, even if the complained-of conduct occurred (which is denied), and even if the conduct was in retaliation (which is not specifically alleged), the claim fails on element (4) of a retaliation claim because there was no chilling." (*Id.*) Moore's grievances and filing of a federal lawsuit establishes that the alleged "snitch" label did not chill Moore's First Amendment right to exercise the grievance or litigation processes. (*Id.*) Delafontaine asserts the First Amendment claim fails as a matter of law substantively because Moore was not injured by the alleged label. See *Miller,* 976 F.3d 737 at *1 (stating that plaintiff's claim was fatally flawed because, "aside from harm to his reputation, he has failed to allege any particular injury caused by the allegedly unconstitutional retaliatory conduct of defendants."). Moore's response in opposition to Delafontaine's motion for summary judgment does not address the First Amendment claim. (*See* ECF No. 21.)

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). Ninth Circuit courts are obligated to give a liberal construction to the filings of *pro*

9

*se* litigants, especially when they are civil rights claims by inmates. *Blaisdell v. Frappiea,* 729 F.3d 1237, 1241 (9th Cir. 2013). In screening Moore's complaint, the court found Moore stated sufficient facts that allowed the court to infer his First Amendment rights were also violated by Delafontaine. (ECF No. 4 at 5.) Specifically, the court found, based on Moore's allegations, Delafontaine accused Moore of being a snitch in front of multiple inmates, in retaliation for Moore's filing a grievance against him. (*Id.* at 6.)

Prisoners have a First Amendment right to file prison grievances. *Rhodes v. Robinson,* 408 F.3d 559, 567 (9th Cir. 2005). Retaliation against prisoners for their exercise of this right is itself a constitutional violation and prohibited as a matter of clearly established law. *Brodheim v. Cry,* 584 F.3d 1262, 1269 (9th Cir. 2009). Specifically, a corrections officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct. *Shepard v. Quillen,* 840 F.3d 686, 688 (9th Cir. 2016). There are five basic elements for a viable claim of First Amendment retaliation in the prison context: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim,* 584 F.3d at 1269.

The court finds the liberal construction of *pro se* litigant complaints allows for the court to infer a claim of First Amendment retaliation against Moore. However, in light of Delafontaine's argument that the First Amendment claim fails because Moore could not prove a chilling effect upon the exercise of his First Amendment rights, as evidenced by the filing of grievances and the instant case, and the fact that Moore himself does not allege or prove actual injury, the court finds the First Amendment retaliation claim should be dismissed. Moreover, Moore failed to address the First Amendment issue in his opposition and has not provided any admissible evidence to create an issue of fact on this claim. Thus, the court finds there is no genuine issue of material dispute relating to

the First Amendment retaliation claim, and Defendant's motion for summary judgment should be granted.

Because the court finds that no First or Eighth Amendment constitutional violations occurred, it need not address Delafontaine's qualified immunity argument.

## IV.  CONCLUSION

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 19) be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 19) be **GRANTED**.

**DATED:**   MARCH 20, 2020

_____
UNITED STATES MAGISTRATE JUDGE